**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BANKRATE, INC., KENNETH S. ESTEROW, PETER C. MORSE, SETH BRODY, MICHAEL J. KELLY, SREE KOTAY, CHRISTINE PETERSEN, RICHARD PINOLA, MITCH TRUWIT, RED VENTURES HOLDCO, LP, and BATON MERGER CORP.,<br><br>　　　　　Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on July 3, 2017 (the "Proposed Transaction"), pursuant to which Bankrate, Inc. ("Bankrate" or the "Company") will be acquired by Red Ventures Holdco, LP ("Parent") and Baton Merger Corp. ("Merger Sub," and together with Parent, "Red Ventures").

2. On July 2, 2017, Bankrate's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Red Ventures. Pursuant to the terms of the Merger Agreement, shareholders of Bankrate will receive $14.00 per share in cash.

3. On July 28, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Bankrate common stock.

9. Defendant Bankrate is a Delaware corporation and maintains its principal executive offices at 1675 Broadway, 22nd Floor, New York, New York 10019. Bankrate's common stock is traded on the NYSE under the ticker symbol "RATE."

10. Defendant Kenneth S. Esterow ("Esterow") has served as a director, President, and Chief Executive Officer ("CEO") of Bankrate since January 2014.

11. Defendant Peter C. Morse ("Morse") has served as a director of Bankrate since 1993 and as Chairman of the Board since 2002.

12. Defendant Seth Brody ("Brody") has served as a director, President, and Chief Executive Officer ("CEO") of Bankrate since 2006.

13. Defendant Michael J. Kelly ("Kelly") has served as a director of Bankrate since June 2012.

14. Defendant Sree Kotay ("Kotay") has served as a director of Bankrate since December 2014.

15. Defendant Christine Petersen ("Petersen") has served as a director of Bankrate since December 2014.

16. Defendant Richard Pinola ("Pinola") has served as a director of Bankrate since 2011.

17. Defendant Mitch Truwit ("Truwit") has served as a director of Bankrate since 2009.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a North Carolina limited partnership and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, an indirect wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## **CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Bankrate (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of June 30, 2017, there were approximately 89,702,872 shares of Bankrate common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Bankrate is a leading online publisher, aggregator, and distributor of personal finance content. The Company aggregates large scale audiences of in-market consumers by providing them with proprietary, fully researched, comprehensive, independent, and objective personal finance and related editorial content across multiple vertical categories, including credit cards, mortgages, deposits, senior care and other categories, such as personal and auto loans retirement and taxes. Bankrate's flagship sites—CreditCards.com, Bankrate.com, and Caring.com—are leading destinations in each of their respective verticals and connect their audiences with financial service and senior care providers and other contextually relevant advertisers.

29. Bankrate also owns and operates a number of specialist sites, apps and social platforms, including NextAdvisor.com, The Points Guy, Interest.com, Quizzle.com and Walla.by. The Company also develops and provides content, tools, web services, and co-branded websites to over 100 online partners, including MSN, Realtor.com, MarketWatch, and Bloomberg. In addition, Bankrate licenses editorial content to leading news organizations such as Yahoo! and Tribune News Service.

30. The Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

31. The Individual Defendants have all but ensured that another entity will not

emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

32. Further, the Company must promptly advise Red Ventures of any proposals or inquiries received from other parties.

33. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Red Ventures a "matching right" with respect to any "Superior Proposal" made to the Company.

34. Further locking up control of the Company in favor of Red Ventures, the Merger Agreement provides for a "termination fee" payable by the Company to Red Ventures if the Individual Defendants cause the Company to terminate the Merger Agreement.

35. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

36. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

37. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

38. The Proxy Statement omits material information regarding Bankrate's financial projections and the analyses performed by the Company's financial advisor in connection with

the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan").

39. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) the Company's projected unlevered free cash flows for years 2017 through 2026, as well as the line items used to calculate those unlevered free cash flows, that were used in J.P. Morgan's Discounted Cash Flow Analysis; (ii) the Company's projected operating income and net income for years 2017 through 2026; (iii) the projected synergies or costs savings that are expected to result from the Proposed Transaction; and (iv) the line item projections for the metrics used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

40. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's unlevered free cash flows for years 2017 through 2026, as well as the line items used to calculate those unlevered free cash flows; (ii) the inputs and assumptions underlying the discount rate range of 10.5% to 12.5% applied by J.P. Morgan; and (iii) the terminal multiples that were implied from this analysis.

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Certain

Bankrate Unaudited Prospective Financial Information;" and (ii) "Opinion of Bankrate's Financial Advisor."

43. The Proxy Statement omits material information regarding potential conflicts of interest of J.P. Morgan and the background leading to the Proposed Transaction.

44. Specifically, the Proxy Statement indicates that J.P. Morgan acted as lead arranger on Red Ventures' syndicated credit facility in April 2017, which was subsequent to J.P. Morgan being engaged by Bankrate in connection with the Proposed Transaction in September 2016. The Proxy Statement, however, fails to disclose whether J.P. Morgan informed the Board and/or requested permission from the Board to act as Red Ventures' lead credit facility arranger while simultaneously representing Bankrate in connection with its search for potential acquirers. The Proxy Statement also fails to disclose the amount of compensation that J.P. Morgan has earned or expects to earn in connection with its acting as Red Ventures' lead credit facility arranger.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Opinion of Bankrate's Financial Advisor."

47. The Proxy Statement also omits material information regarding potential conflicts of interest of the Company's officers and directors.

48. In particular, the Proxy Statement states that, on July 29, 2017, the Board met and the members of Compensation Committee discussed "certain revisions to the existing employment agreements with each of the members of the Company's senior leadership team that

8

the Compensation Committee proposed to adopt, including certain revisions that were previously reviewed and considered by the Compensation Committee." These "revisions" apparently provided each of the Company's "named executive officers" with "enhanced severance benefits" in connection with the Proposed Transaction. Additionally, the Merger Agreement provides that the Company may pay bonuses to its employees and executive officers.

49.     The Proxy Statement, however, fails to fully disclose the timing and nature of all communications regarding these "enhanced severance benefits" and bonus payments, including who proposed the benefits, when the severance benefits and bonuses were proposed, who participated in all such communications, and whether (and when) Red Venture consented to these amended severance benefits and bonuses.

50.     In addition, the Proxy Statement indicates that the Company's Vice President and Controller, Janet Gunzburg, is a party to a retention letter agreement that will provide her with severance benefits, but the Proxy Statement fails to disclose when Ms. Gunzburg entered into that retention letter agreement, and whether it was entered into in connection with the Proposed Transaction.

51.     Communications regarding the payment of large sums of compensation in connection with a transaction during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

52.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background

9

of the Merger;" and (ii) "Interests of the Company's Directors and Executive Officers in the Merger."

53. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Bankrate's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Bankrate

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Bankrate is liable as the issuer of these statements.

56. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

57. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

58. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

59. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

60. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

61. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Red Ventures

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants and Red Ventures acted as controlling persons of Bankrate within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Bankrate and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

64. Each of the Individual Defendants and Red Ventures was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as

alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

66. Red Ventures also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

67. By virtue of the foregoing, the Individual Defendants and Red Ventures violated Section 20(a) of the 1934 Act.

68. As set forth above, the Individual Defendants and Red Ventures had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 3, 2017

**RIGRODSKY & LONG, P.A.**

By: */s/ Timothy J. MacFall*
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
(516) 683-3516

Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800